# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHEEM COLLINS** | : | |
| | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **THE CITY OF PHILADLPHIA and** | : | |
| **DETECTIVE JIM RAGO and** | : | |
| **POLICE OFFICER ANDREW** | : | |
| **JERICHO** | : | |
| **Defendants** | : | |

Plaintiff Raheem Collins, represented by attorneys Joel J. Feller, and Kevin Harden, Jr., of Ross Feller Casey, LLP, alleges the following:

## **INTRODUCTION**

1.      Raheem Collins served 18 years, 9 months, and 5 days in prison for a crime he did not commit.

2.      On November 22, 2024, the Philadelphia District Attorney's Office dismissed the charges against Mr. Collins, ending his almost two-decade nightmare.

3.      Defendants caused Collins to be wrongfully arrested and wrongfully prosecuted based on false evidence that the Defendants knew to be false, improbable and unreliable.

4.      Despite video evidence demonstrating that the prosecution's star (and only) eyewitness had substantial credibility issues, Defendants caused the malicious prosecution of Mr. Collins by bolstering that witness' testimony, failing to disclose material exculpatory evidence, and by deliberately deceiving the Court by knowingly allowing and bolstering untruthful evidence and testimony.

5.      In the end, the uncontroverted physical and forensic evidence demonstrated that Mr. Collins is innocent and all the evidence presented against him was incompetent.

6.      The prosecution's star (and only) eyewitness acknowledges that she never saw Mr. Collins at the scene of the crime. Had the Defendants performed their duties in accordance with the United States Constitution, they would not have maliciously prosecuted Plaintiff through this witness.

7.      Mr. Collins brings this suit for the damages caused to him by the Defendants' gross misconduct.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §1983 and 28 U.S.C. §§1331, 1343(a)(3), 1343(a)(4) and 1367(a).

9.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a) in that the Defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that gave rise to this action occurred within the Eastern District of Pennsylvania.

10.     Even more, the amount in controversy in this matter exceeds $75,000.00.

## JURY DEMAND

11.      Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

12.    Raheem Collins is a resident of the Commonwealth of Pennsylvania. He currently resides in the Eastern District of Pennsylvania and resided in the Eastern District of Pennsylvania prior to his wrongful conviction.

13.    Defendant, the City of Philadelphia, is a municipality in the Commonwealth of Pennsylvania and is officially responsible for the policies, practices and customs of the Philadelphia Police Department.

14.    Defendant Detective Jim Rago was at all times relevant to this Complaint an officer and employee of the defendant City of Philadelphia's Police Department acting under the color of law and within the scope of his employment under the statutes, ordinances, regulations, policies, customs and usage of the City of Philadelphia and its police department. These claims are made against Defendant Rago in his individual capacity.

15.    At all times relevant to this Complaint, Detective Rago acted in concert with other City of Philadelphia employees, known and unknown, to deprive Mr. Collins of his constitutionally protected rights.

16.    Defendant Police Officer Andrew Jericho was at all times relevant to this Complaint an officer and employee of the defendant City of Philadelphia's Police Department acting under the color of law and within the scope of his employment under the statutes, ordinances, regulations, policies, customs and usage of the City of Philadelphia and its police department. These claims are made against Defendant Rago in his individual capacity.

17.    At all times relevant to this Complaint, Officer Jericho acted in concert with other City of Philadelphia employees, known and unknown, to deprive Mr. Collins of his constitutionally protected rights.

**FACTUAL BACKGROUND**

18.    On January 31, 2006, Philadelphia Police arrested Raheem Collins for the January 28, 2006, shooting of 6-year-old Jabar Wright.

19.    Police arrested Mr. Collins after an eyewitness provided them with conflicting stories, first identifying Donte Collins as the shooter, and then identifying Mr. Collins as the shooter. Both men have since been exonerated.

20.    Defendants intentionally excluded information proving the unreliability of the witness' identifications from their trial testimony.

21.    Mr. Rollins had a rock-solid alibi, which included unbiased witnesses and video surveillance and cell phone records demonstrating that the prosecution's star and only witness' testimony was entirely false.

22.    Mr. Collins had a rock-solid alibi, which included unbiased witness testimony that contradicted and demonstrated that the prosecution's star and only witness' testimony was entirely false.

23.    Detective Rago falsely testified that there was a "continuing effort to investigate" the case, despite his refusal to investigate the Defendants' rock-solid alibis, all of which had been provided to the Defendants well in advance of the criminal trial.

24.    Had Detective Rago actually continued his effort to investigate the shooting, he would have discovered that the star and only witness' testimony was affirmatively contradicted by "witness testimony, video footage of what appears to be [Plaintiff's co-defendant] several miles away from the shooting, sales receipts potentially placing him far away from the shooting, and cell phone records indicating multiple calls on [Plaintiff's co-defendant's] phone at the time of the

shooting," demonstrating that her testimony was pure conjecture. *See Commonwealth v. Rollins*, No. 3499 EDA, 2016 WL 7369123, *1 (Pa. Super. Dec. 20, 2016).

25.     Detective Rago falsely bolstered the Commonwealth's case by testifying about the availability of DNA evidence, speculating that testing for DNA evidence on fired cartridge casings was "something you only see in television" and offering completely false testimony without having been qualified as an expert in forensics or DNA.

26.     Detective Rago testified in lieu of the original assigned detective and implicated to the jury that he had investigated the case thoroughly, including the underlying alibis of the Defendants, when in fact, he had not.

27.     Police Officer Andrew Jericho stopped Plaintiff's codefendant, Donte Rollins, prior to his arrest.

28.     To bolster the malicious prosecution of Plaintiff and his codefendants, Officer Jericho maliciously misrepresented the timing of the stop of Mr. Rollins to discredit his alibi and to bolster the testimony of the Commonwealth's sole and only eyewitness.

29.     But for the maliciously false and deceiving testimony from Detective Rago and Officer Jericho, no jury would have been able to reach the conclusion that the Commonwealth's sole and only eyewitness was telling the truth.

30.     But for the maliciously false and deceiving testimony from Detective Rago and Officer Jericho, Mr. Collins would not have wrongfully prosecuted, convicted, and incarcerated.

31.     These Defendants caused Mr. Collins to be wrongfully arrested, prosecuted, and convicted of attempted murder and related charges, causing him to be sentenced to 62 and one-half years to 125 years of imprisonment, of which he served almost 19 years before the Honorable Zac Shaffer granted his Post-Conviction Relief petition and the Commonwealth withdrew charges.

32.     Mr. Collins now sues the City of Philadelphia and Defendants Rago and Jericho for the violations of his constitutional rights that caused his malicious prosecution, wrongful conviction, and wrongful incarceration.

## UNCONSTITUTIONAL MISCONDUCT IN SHOOTING INVESTIGATIONS

33.     The Philadelphia Police Department has a pervasive pattern and practice of unconstitutional misconduct in their shooting investigations and prosecutions, including coercion and inducement of false statements from witnesses, suggestive identification techniques, suppression and withholding of exculpatory and inconsistent evidence, perjury or "testilying," deliberate deception, fabrication of evidence, and the knowing use and bolstering of false evidence and testimony. These unconstitutional practices date back to at least the early 1970's and have continued up to and beyond the investigation and prosecution of Mr. Collins.

34.     Throughout that same timeframe, the City of Philadelphia had, in force and effect, policies, practices and customs of unconstitutional misconduct in their shooting investigations, including coercion and inducement of false statements from witnesses, suggestive identification techniques, suppression and withholding of exculpatory and inconsistent evidence, perjury or "testilying," deliberate deception, fabrication of evidence, and the knowing use and bolstering of false evidence and testimony.

35.     At the time of the investigation and prosecution of Mr. Collins, the Philadelphia Police Department had a policy, practice or custom of using various techniques to coerce or induce false statements and identifications, including, but not limited to, subjecting witnesses to needlessly prolonged interrogations and interviews, failing to record interviews and interrogations, isolation, making false promises, threatening charges for unrelated misconduct, offering assistance in unrelated criminal and personal matters, interviewing witnesses while they are under the

influence of drugs or traumatizing events that make them more susceptible to coercion or mistake, and assertions that witnesses will benefit from making a statement that assists the police or suffer some sort of disadvantage, punishment or incarceration if they refuse.

36.    At the time of the investigation and prosecution of Mr. Collins, the Philadelphia Police Department had a policy, practice or custom where its employees would use various techniques to suppress and withhold material and relevant statements and evidence, in violation of their known duties under the United States Constitution, including, but not limited to, making false statements to prosecutors and courts about the existence of evidence, failing to provide complete documents and information to prosecutors and courts, intentionally omitting information and documents from investigative files, coercing and inducing witnesses into keeping exculpatory and inconsistent information from prosecutors and courts, disregarding or deleting exculpatory and inconsistent information from files, ignoring or omitting exculpatory and inconsistent information from documents so there is no record to be deleted, omitted or suppressed, threatening witnesses in possession of exculpatory and inconsistent information to prevent them from coming forward to prosecutors, deleting information relating to or identifying material and relevant witnesses so they do not testify at trial, and testifying in a deceitful, intentionally incomplete, or intentionally ambiguous fashion so as to mislead a court and jury into falsely convicting innocent individuals.

37.    These policies, practices and customs involved the use of various techniques to coerce and induce inculpatory statements, including, without limitation, isolation, separating children, teenage, and otherwise vulnerable suspects or witnesses from their friends and family, subjecting individuals to needlessly prolonged interviews and interrogations, making false promises, including the promise that a suspect or witness will be allowed to go home or avoid charges if they make an inculpatory statement, the use or threat of physical violence, authoritative

assertions of a suspect's guilt, including, without limitation, confrontation with false inculpatory evidence, knowing use of coercive and unreliable methods during interviews and interrogations, and providing false assurances that the suspect or witness will benefit from making an inculpatory statement that minimizes the witness or suspect's own involvement or provides the witness with some sort of benefit.

38.    These policies, practices and customs also involved the use of various deceitful techniques to make false statements and testimony appear true and reliable, including, without limitation, providing a witness or suspect with details about the crime that only the perpetrator or police could know, whether through leading questions or more direct communication, taking misleading steps to make coerced or induced statements appear as if they originated from the suspect following a lawful interrogation, selectively documenting a witness or suspect's eventual statement and not the preceding interrogation, preparation and rehearsal, misrepresenting that a suspect's formal statement was a verbatim statement in the suspect's own words, and intentionally ignoring or disregarding physical or forensic evidence that contradicts their version of events or their testimony to judges and juries to increase the likelihood of conviction.

39.    These policies, practices and customs are well known to the City of Philadelphia and its policymakers, with respect to criminal investigations and prosecutions as a result of newspaper investigations, including Pulitzer Prize winning reporting in the Philadelphia Inquirer in 1977-1978 ("The Homicide Files"), governmental investigations, judicial opinions and decisions, complaints from lawyers and civilians, complaints lodged by the public, prior litigation and internal police investigations.

40.    In cases where there are exonerations that call into question the work of particular police officers or investigators, or where the factual legitimacy of the evidence in a case involving

codefendants is demonstrably false, the City of Philadelphia frequently agrees to exonerate one codefendant but will maliciously allow the other codefendants to sit in prison on false evidence to protect themselves from civil liability. In many cases, the City of Philadelphia offers plea deals with the opportunity of immediate parole and freedom that will limit the liability to the City of Philadelphia, regardless of whether there were egregious constitutional violations and evidence of actual innocence.

41.    The Homicide Files reporting documented that between 1974 and 1978, 1 in 5 confessions obtained by homicide detectives were excluded due to "beatings, threats of violence, intimidation, coercion and knowing disregard for constitutional rights in the interrogation of homicide suspects and witnesses." All these confessions and statements were supported by the false testimony of officers and investigators who presented to court and argued that the confessions and statements were secured in accord with the United States Constitution.

42.    The Homicide Files reporting documented beatings intended to deceive the Courts that left no visible injuries, including intentional strikes to the abdomen, groin, feet and ankles, and the use of a phone book to blunt repeated strikes to the head.

43.    The Homicide Files reporting documented a vigilante mindset amongst Philadelphia Police Officers that has continued up to an until Mr. Collins's conviction, with detectives providing interviews where they explained that the "homicide detective must fight the lawyers, the judges, the Supreme Court – and he must fight crime" and "outrage at a court system that allows murderers to 'walk' or go free." Training and discipline were nonexistent.

44.    The Homicide Files reporting documented testimony from an Assistant District Attorney who described direct supervision of violently corrupt homicide investigation by then-Police Commissioner Joseph O'Neill and Chief Inspector Joseph Golden. Despite the

Commissioners' direct involvement and supervision, a judge concluded that a suspect was "beaten" with a lead pipe, punched with brass knuckles and handcuffs and grabbed by the testicles. No one was disciplined.

45.    The Homicide Files reporting documented a culture of misconduct so thoughtless that homicide detectives would sometimes obtain confessions from co-defendants that were factually impossible – such as two men confessing to firing the sole bullet that killed a homicide victim.

46.    The Homicide Files reporting documented dozens of unlawful interrogations, gruesome beatings that caused hospitalizations and wrongful convictions, and an absolute refusal by policy makers for the Philadelphia Police Department or defendant City of Philadelphia, to acknowledge the criminal conduct of its homicide detectives.

47.    The Sex for Lies Corruption Scandal involved widespread unconstitutional practices that were not appropriately addressed or remediated despite pervasive knowledge throughout the Philadelphia Police Department, the City of Philadelphia, and the Commonwealth of Pennsylvania.

48.    The police misconduct in the Sex for Lies Corruption Scandal included constitutional violations that mirror those violations suffered by Mr. Collins, including omission of material relevant information, suppression of exculpatory evidence, coercive, inducive and suggestive interrogation tactics, false allegations of criminal conduct and inappropriate relationships with criminal defendants, informant and witnesses.

49.    In the Sex for Lies Corruption Scandal, the City of Philadelphia was deliberately indifferent to the officers' misconduct and credible complaints about misconduct were disregarded.

50.     Various cases demonstrate that misconduct was pervasive within Philadelphia's Police Department at time of the investigation and subsequent prosecution of Mr. Collins. This misconduct was pervasive within the Philadelphia Police Department before and after the framing of Mr. Collins and the misconduct described in this Complaint was committed and deliberately ignored by Police Department supervisors because of their routinely deliberate indifference to this sort of misconduct.

51.     The cases demonstrating deliberate indifference to Philadelphia Police Department misconduct were recently described by the Philadelphia Inquirer in Part 3 of its "Losing Conviction" series. The report describes the convictions of exonerees William Franklin and Willie Stokes, both of whom were wrongfully convicted of homicide in the 1980s due to misconduct in the Philadelphia Police Department's Homicide Unit.

52.     Referred to as the Sex for Lies misconduct cases, they demonstrate notice to the Courts, City policymakers and the public of Philadelphia Police Department misconduct.

53.     The misconduct of Philadelphia Police Department's homicide detectives was so widespread in the 1980s that the Superior Court of Philadelphia reversed and vacated the conviction of Arthur Lester because of the 1983 conduct of Philadelphia homicide detectives.

54.     Specifically, the Superior Court explained that "there is … uncontested evidence that Lester was visited by three women who, at separate times, engaged in sexual relations with him at the Police Administration Building in the months following his confession." They further reasoned that "[a]ll three women testified … that they were admitted to the Police Administration Building to see Lester," that they were "permitted to visit freely with Lester in a closed, private room for significant periods of time" and "[a]ll three women testified that they engaged in sexual

intercourse with Lester during their visits." <u>Commonwealth v. Lester</u>, 572 A.2d 694 (Pa. Super. 1990).

55.    Most importantly, prosecutors did "not contest that Lester was provided with sex while he was incarcerated" at the Homicide Unit. <u>Id</u>. This was contrary to the sworn testimony of Homicide Detective Lawrence Gerrard, indicating the Commonwealth's belief that Detective Gerrard's testimony lacked credibility.

56.    Philadelphia Detectives coordinated sexual intercourse between these women and Lester, who was incarcerated, to induce Lester's false statements and testimony against innocent men accused of murder.

57.    The Philadelphia Police Department never investigated or disciplined any detective regarding the Superior Court's reversal of Mr. Lester's conviction. Detective Gerrard maintained his position in the Philadelphia Police Department, amounting to a tacit, if not explicit approval of his and other detectives' unconstitutional misconduct.

58.    Similar allegations to those in the Lester case arose in other cases from the timeframe of Mr. Collins's conviction, many of which alleged improper inducement of false testimony, fabricated evidence, outright perjury and deliberate deception by Philadelphia Police Department detectives.

59.    Other convictions that resulted in exonerations or acquittals demonstrate the unabated and pervasive patterns, practices and customs of official misconduct within the Philadelphia Police Department. They include the exonerations of:

   **a.** Willie Stokes
   **b.** Terrance Williams
   **c.** Raymond Carter
   **d.** Curtis Crosland
   **e.** Andrew Swainson
   **f.** Anthony Reid

**g.** Ronald Johnson

**h.** Christopher Williams

**i.** Chester Hollman

**j.** Willie Veasy

**k.** Theophalis Wilson

**l.** Anthony Wright

**m.** Johnny Berry

**n.** Daniel Gwynn

**o.** Walter Ogrod

**p.** Lance Felder

**q.** Eugene Gilyard

**r.** John Miller

**s.** Edward Ramirez

**t.** Terrance Lewis

**u.** Termaine Hicks

**v.** Mark Whitaker

**w.** Donald Outlaw

**x.** Kareem Johnson

**y.** Donte Rollins

**z.** Hassan Bennett

**aa.** Tyree Lawson

**bb.** Dontia Patterson

**cc.** Dwayne Thorpe

**dd.** Rafiq Dixon

**ee.** Jamaal Simmons

**ff.** James Frazier

**gg.** Marvin Hill

**hh.** Obina Onyiah

**ii.** India Spellman

**jj.** Arkel Garcia

**kk.** Gerald Camp

**ll.** Sherman McCoy

**mm.**       Neftali Velasquez

**nn.** Harold Staten

**oo.** Jermel Lewis

**pp.** Sacon Youk

**qq.** Hezekiah Thomas

**rr.** Quiante Perrin

60.     As a result of a pattern of unconstitutional police misconduct, a pattern that continued at the time of the arrest of Mr. Collins, the United States District Court for the Eastern District of Pennsylvania entered a consent decree in the matter of NAACP v. City of Philadelphia,

which required widespread reforms in its police department, while also limiting certain aspects of their investigative practices and policies.

61.     Despite this consent decree, these patterns of misconduct continued then and continue today, as exemplified by the investigation into Mr. Collins's malicious prosecution, and those wrongful convictions detailed in this Complaint, due to the deliberate indifference to these policies, practices and customs by the Philadelphia Police Department and the City of Philadelphia.

62.     Throughout the 1970s and continuing until today, and concurrent with the investigation and prosecution of Mr. Collins by the Philadelphia Police Department, there was a pattern, practice and custom of violating the constitutional rights of criminal suspects and others, including systemic violations of the Fourth and Fourteenth Amendments and the use of false, deceptive and intentionally misleading testimony. .

63.     On 3 separate occasions in the 1980's, courts in the Eastern District of Pennsylvania issued orders enjoining the Philadelphia Police Department from engaging in unconstitutional practices:

   a.  Cliett v. City of Philadelphia: Consent decree arising out of "Operation Cold Turkey", a police practice that resulted in the unlawful arrest and detention of 1500 individuals in drug enforcement practices;

   b.  Spring Garden Neighbors v. City of Philadelphia: Enjoining police sweeps of Latinos in Spring Garden area in a homicide investigation;

   c.  Arrington v. City of Philadelphia: Enjoining stops, detentions and searches of African-American men during investigation of the "Center City Stalker";

64.     In 2011, the City of Philadelphia agreed to the appointment of an independent court-appointed monitor following a federal class action lawsuit alleging the improper

implementation of an unconstitutional "stop and frisk" policy by the Philadelphia Police Department.

65.    At the time of the investigation and prosecution of Raheem Collins, the Philadelphia Police Department had a practice, policy and custom of:

a. Engaging in unlawful interrogation of suspects, witness detentions and interrogations, planting of evidence, fabrication and illegal inducement of witness and suspect statements, and failing to disclose exculpatory evidence;

b. Failing to take appropriate disciplinary or other corrective actions with respect to police officers who engaged in illegal or unconstitutional conduct and obstructing disciplinary processes, including intentionally false and deceptive testimony;

c. Fabrication of evidence and deliberate deception of courts by concealing and suppressing relevant and material evidence, perjury and perjury by omission;

d. Failing to properly train and supervise officers and supervisors with respect to the constitutional limitations on their investigative, detention, search and arrest powers;

e. Ignoring, with deliberate indifference, systemic patterns of police misconduct and abuse of civilians' rights during police investigations and prosecutions of criminal suspects and defendants, including unlawful police interrogations, searches, arrests, coercion of witnesses, falsifying, fabrication and illegal inducement of evidence, suppression of exculpatory evidence, and deliberate deception of courts by concealing and suppressing relevant and material evidence, perjury and perjury by omission;

f. Failing to properly sanction or discipline officers, who are aware of and conceal and aid and abet violations of constitutional rights of individuals by other officers, as described in the Complaint, thereby causing and encouraging detectives and officers to violate the rights of citizens, including Mr. Collins.

66.    At the time of the investigation and prosecution of Mr. Collins, and for many years before and thereafter, the City of Philadelphia, has been deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division of the Philadelphia Police Department has failed to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

a. excessive and chronic delays in resolving disciplinary complaints;

b. a lack of consistent, rational and meaningful disciplinary and remedial actions;

c. a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;

d. the internal investigatory process fell below accepted practices and was arbitrary and inconsistent;

e. departmental discipline, as practiced, was incident-based rather than progressive, thus, repeat violators were not penalized in proportion to the number of violations;

f. the conduct of internal investigations demonstrated that internal affairs personnel were not adequately trained and supervised in the proper conduct of such investigations;

g. a global analysis of internal investigatory procedures indicated a pattern of administrative conduct where the benefit of the doubt was given to the officer rather than the complainant;

h. serious deficiencies in the quality of internal investigations and the validity of the departmental findings and conclusions;

i. lack of an effective early warning system to identify, track and monitor "problem" officers;

j. the department frequently failed to interview available eyewitnesses to incidents involving citizen complaints of misconduct, interviews that were conducted were below acceptable standards of police practice and failed to address key issues;

k. the department failed to acknowledge the disproportionate use of force used by police officers in the investigation of citizen complaints and failed to properly categorize the police officers' misconduct in those cases as an impermissible use of force; and

l. failure to remedy intentional obstruction by officers and others involved in the internal disciplinary mechanism.

## **DAMAGES**

67. The unconstitutional misconduct of defendant City of Philadelphia, by and through its employee and agent Defendants Rago and Jericho, and through its unconstitutional policies, practices and customs, caused Mr. Collins to be illegally arrested, maliciously prosecuted, and wrongly convicted and incarcerated. The Defendant's unconstitutional misconduct caused Mr. Collins the terror of life imprisonment without a possibility of parole and the pain and suffering of almost 19-years of involuntary servitude, all the while believing he'd die in prison.

68. Defendant's illegal arrest, malicious prosecution and wrongful conviction and incarceration of Mr. Collins caused him the loss of his youth, pain and suffering, mental anguish, emotional distress, countless indignities, permanent loss of human development, loss of freedom,

involuntary servitude, loss of opportunity, loss of familial and intimate relations, post-traumatic stress disorder and the loss or curtailment of all of his constitutional rights, include his right to suffrage, freedom of speech, the right to peaceably assemble, freedom of religion and his bodily autonomy.

69.     Mr. Collins's is now 44-years-old. He missed almost the entirety of his children's childhood while wrongfully incarcerated. His damages are inclusive of the suffering of his now adult children.

70.     As a direct result of Defendant's unconstitutional misconduct, Mr. Collins suffered economic damages. He has not contributed to any sort of retirement plan since his illegal arrest.

71.     Due to Defendant's unconstitutional misconduct, Mr. Collins suffered the indignities of inadequate medical and dental care.

72.     Due to Defendant's unconstitutional misconduct, Mr. Collins was forced to labor for pennies per hour as a prison employee, and to labor uncompensated as his own attorney and investigator, working alongside his family to free himself from a wrongful murder conviction.

**COUNT I: 42 U.S.C. §1983**
**Malicious Prosecution in Violation of the Fourth Amendment**

73.     Defendants Rago and Jericho, acting individually and in concert with others known and unknown, and within the scope of his employment with defendant City of Philadelphia's Police Department, with malice and knowing that probable cause did not exist to prosecute Mr. Collins for attempted murder and other related charges, through actions, testimony and deception, intentionally caused Mr. Collins to be arrested, charged and prosecuted for those crimes, thereby violating Mr. Collins's clearly established rights, under the Fourth Amendment of the United States Constitution, to be free of arrest, prosecution and conviction absent probable cause.

74.     Defendants Rago and Jericho fabricated evidence or presented evidence in an intentionally misleading way and intentionally withheld and misrepresented material relevant evidence, all of which resulted in the arrest, prosecution, and conviction of Mr. Collins without probable cause.

75.     Defendants Rago and Jericho performed the acts described in this Complaint under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Collins's clearly established constitutional rights.  No reasonable police officer would have believed this conduct was lawful.

76.     Defendants Rago and Jericho's falsehoods and omissions were used to obtain the conviction of Mr. Collins.

77.     The prosecution finally terminated in Mr. Collins's favor on November 22, 2024, after the Philadelphia District Attorney's Office *nolle prossed* the charges against him.

78.     The acts and omissions by Defendants Rago and Jericho, as described in this Complaint, were the direct and proximate cause of Mr. Collins's illegal arrest, malicious prosecution, wrongful conviction and incarceration and injuries because Defendants Rago and Jericho knew, or should have known, that his conduct would result in the wrongful arrest, prosecution, conviction, and incarceration of Mr. Collins.

## COUNT II: 42 U.S.C. § 1983
### Deprivation of Liberty without Due Process of Law and
### Denial of a Fair Trial Under the Fourteenth Amendment

79.     Defendants Rago and Jericho deprived Mr. Collins of his clearly established constitutional right to due process of law and to a fair trial by fabricating or tampering with evidence and deliberately using coercion, inducement, perjury, perjury by omission and suggestion to deprive Mr. Collins of a fair trial.

80.    Defendants Rago and Jericho deprived Mr. Collins of his right to a fair trial by concealing, suppressing and withholding relevant and material evidence as described in this Complaint and perjuring himself by omission, all of which prevented Mr. Collins from mounting a viable defense.

81.    Defendants Rago's and Jericho's fabrications, tampering, concealment, suppression and withholding were performed under color of state law, intentionally and with reckless disregard for the truth, and with deliberate indifference to Mr. Collins's constitutional rights. No reasonable officer would have believed this conduct was lawful.

82.    Defendants Rago and Jericho deprived Mr. Collins of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation, including, without limitation, by failing to pursue or document information from various witnesses, including alibi witnesses, and forensic evidence to deceive by omission, perjury through omission and deliberately deceiving the Court, all of which would have led to Mr. Collins's prompt exoneration had the misconduct not occurred.

83.    Defendants Rago's and Jericho's acts and omissions, as described in this Complaint, were the direct and proximate cause of Mr. Collins's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Collins's wrongful arrest, prosecution, conviction and incarceration.

### COUNT III: 42 U.S.C. § 1983
### Municipal Liability Claim

84.    Defendant City of Philadelphia, by and through its final policymakers, had in force and effect during time of Mr. Collins's wrongful arrest and conviction, and for many years preceding and following this investigation, policies, practices and customs of unconstitutional misconduct in criminal investigations, including, the application of an unsound definition of

probable cause in criminal investigations and submissions to judicial officers, the use of coercive and inducive techniques in interviews and interrogations to obtain evidence, the fabrication of inculpatory evidence, the fabrication of incriminating statements from witnesses, suspects and arrestees by coercion, suggestion, inducement and feeding details about the crime, including identifications and pertinent facts, without disclosure, the deceptive withholding of material and relevant evidence, perjury and perjury by omission.

85.    Final policymakers for defendant City of Philadelphia, had actual or constructive notice of these practices, policies and customs, but repeatedly failed to make any meaningful investigation into charges that their employees and agents were using unconstitutional methods, policies and practices, coercive and inducive techniques in interviews and interrogations to obtain false confessions and statement, deceptively withholding material and relevant evidence, fabricating evidence, and, particularly, fabricating incriminating statements from witnesses, suspects and arrestees by coercion, inducement, suggestion and feeding details about the crime, including identifications, and failed to take appropriate remedial and disciplinary actions to curb these patterns of misconduct.

86.    Such unconstitutional municipal customs, practices and policies were the moving force behind the wrongful arrest, conviction and illegal two-decade-long imprisonment of Mr. Collins, as well as all the other injuries and damages as described in this Complaint and to be discovered in this litigation.

87.    Defendant City of Philadelphia caused the violation of Mr. Collins's constitutional rights. Defendant City of Philadelphia, with deliberate indifference, employed customs, patterns, practices and policies allowing officers to use their position to unconstitutionally investigate,

detain, arrest, prosecute and convict innocent individuals, and failed to train, supervise and discipline officers who engaged in such conduct.

### COUNT IV
**Civil Rights Conspiracy**

88.    Defendants Rago and Jericho and other City of Philadelphia employees, acting within the scope of their employment and under the color of state law, agreed among themselves and with other individuals, to act in concert to deprive Mr. Collins of his clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, to be informed of the nature and cause of accusations, to have compulsory process for obtaining witnesses in his favor, and to a fair trial.

89.    In furtherance of the conspiracy, the Defendants engaged in and facilitated numerous overt acts, including but not limited to, the following:

    a.  the application of an unsound definition of probable cause in criminal investigations and submissions to judicial officers;
    b.  suggesting, coercing, inducing and fabricating inculpatory evidence in the form of witness statements;
    c.  coercing, inducing and fabricating witness statements and false identifications;
    d.  intentionally or with deliberate indifference failing to comply with their duty to disclose material and relevant evidence during the pendency of the case;
    e.  wrongfully arresting and prosecuting Mr. Collins while knowing they lacked probable cause;
    f.  coercing and inducing false identifications;
    g.  fabricating evidence and deliberating deceiving judicial officers; and
    h.  the deceptive withholding of material and relevant evidence, perjury and perjury by omission.

90.    These acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Collins's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Collins's wrongful arrest, prosecution, conviction and incarceration.

## <u>COUNT V</u>
### State Law Claim

91.     Defendants Rago's and Jericho's knowing, intentional and reckless false statements were the direct and proximate cause of the prosecution of Mr. Collins. Defendants Rago and Jericho caused the malicious prosecution and conviction of Mr. Collins and Defendants Rago and Jericho acted with malice or specific intent to injure.

92.     Mr. Collins suffered a deprivation of liberty because of the prosecution.

93.     Mr. Collins's arrest for attempted murder was not prosecutable once true evidence came to light; hence the charges were *nolle prossed*.

**WHEREFORE**, Plaintiff, Raheem Collins, seeks damages against Defendants, jointly and severally, in an amount greater than $75,000.00, including costs of suit, interest, attorney's fees, punitive/exemplary damages and such other relief as this Honorable Court deems appropriate.

**ROSS FELLER CASEY, LLP**

By: _/s/ Joel J. Feller_____
Joel J. Feller, Esquire (ID #84443)
Kevin Harden, Jr., Esquire (ID #310164)
One Liberty Place - Suite 3450
1650 Market Street
Philadelphia, PA 19103
Tel: 215-574-2000

JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RAHEEM COLLINS | City of Philadelphia, Det. Jim Rago, Officer Andrew Jericho |

| **(b)** County of Residence of First Listed Plaintiff __PHILADELPHIA__ | County of Residence of First Listed Defendant __Philadelphia__ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Joel J. Feller Ross Feller Casey LLP, 1650 Market Street, 34th Fl., Phila., PA 215-574-2000 | City of Philadelphia Law Department, 1515 Arch Street, 14th Fl., Philadelphia, PA 19102 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983

Brief description of cause:
MALICIOUS PROSECTION RESULTING IN TWENTY YEAR WRONGFUL INCARCERATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 12/31/2024 | /s/ Joel J. Feller |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: ___Philadelphia, Pennsylvania_____

---

***RELATED CASE IF ANY:*** Case Number: ___n/a_____ Judge: ___n/a_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?
If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **see certification below**
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases:  *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.