IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHEEM COLLINS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, et al. | : | NO. 24-6920 |

**MEMORANDUM**

**Padova, J.**                                                                                           **October 6, 2025**

    Plaintiff Raheem Collins brings civil rights claims against the City of Philadelphia (the "City") and two Philadelphia police officers arising out of his conviction for a 2006 shooting, which was vacated in 2024 after Plaintiff had been incarcerated for almost 19 years. Defendants now jointly move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, we grant the Motion in part and deny it in part.

**I.      BACKGROUND**

    The Amended Complaint alleges the following facts. On January 31, 2006, Plaintiff was arrested for the January 28, 2006 shooting of 6-year-old Jabar Wright. (Am. Compl. ¶ 20.) The sole eyewitness implicated both Plaintiff and his co-defendant, Donte Rollins, first identifying Rollins as the shooter, and then later stating that the shooter was Plaintiff. (Id. ¶¶ 21, 30.) Both Rollins and Plaintiff had alibis supported by unbiased witness statements and other evidence, which demonstrated that the eyewitness's account was false. (Id. ¶¶ 23-24.)

    Defendants Detective Jim Rago and Officer Andrew Jericho agreed to act in concert with other City employees to bolster the eyewitness's testimony against Plaintiff. (Id. ¶¶ 97-98.) Specifically, Defendant Rago agreed to falsely testify at trial that the case had been investigated thoroughly, and that there was a "continuing effort to investigate" Rollins's and Plaintiff's alibis.

(Id. ¶¶ 25-26, 29.)  Defendant Rago also agreed to testify that obtaining DNA evidence from fired cartridge casings was "something you only see in television," despite knowing that such evidence can be recovered.  (Id. ¶ 28.)  Further, in his testimony, Defendant Rago failed to disclose that the eyewitness had identified multiple individuals as the shooter, which would have undermined her credibility.  (Id. ¶¶ 30-31.)  Defendant Jericho, who had stopped Rollins prior to Rollins's arrest, agreed to misrepresent the timing of the stop in his testimony to portray Plaintiff and Rollins as colluding to create a false alibi.  (Id. ¶¶ 32-36.)  Because the eyewitness identification was the only evidence against Plaintiff, this false testimony was critical to the Government's case and caused Plaintiff to be wrongly convicted.  (Id. ¶¶ 37-38.)  Plaintiff was sentenced to 62½ to 125 years' imprisonment, of which he served almost nineteen years before post-conviction relief was granted and the charges against him were dismissed on November 22, 2024.  (Id. ¶¶ 1-2, 39.)  The eyewitness ultimately recanted her statements and testimony, acknowledging that she never saw Plaintiff at the scene of the crime.  (Id. ¶¶ 7-8, 31.)

At the time of Plaintiff's prosecution, the Philadelphia Police Department ("PPD") engaged in policies, practices, or customs, including: (1) committing misconduct such as suppression of exculpatory evidence, perjury, fabrication of evidence, and the knowing use of false evidence and testimony; (2) manipulating witness testimony by failing to record interviews and interrogations, offering witnesses assistance with unrelated matters, interviewing witnesses compromised by drugs or trauma, and offering to reward witnesses' cooperation or punish non-cooperation; (3) concealing exculpatory evidence by suppressing it from prosecutors and courts, removing it from files, pressuring witnesses to conceal it, and testifying about it falsely; (4) and bolstering fabricated evidence through selective documentation, rehearsed witness statements, misrepresenting statements as being recorded verbatim, and disregarding contradictory evidence.  (Id. ¶¶ 41-45,

78.) Although these policies, practices, and customs were known to City and PPD officials through newspaper reports, judicial decisions, investigations, and complaints, no remedial education or training was effectively implemented.  (Id. ¶¶ 46, 48, 52-60, 62-70.)  PPD's internal disciplinary system was also ineffective due to chronic delays, failure to impose consistent or progressive discipline, inadequate staffing, and pro-officer bias.  (Id. ¶ 79.)  Over time, the City's failure to intervene normalized such misconduct, leading to numerous wrongful convictions.  (Id. ¶¶ 47, 51, 61-62, 69-70, 72.)  This led to consent decrees and court orders enjoining unconstitutional practices.  (Id. ¶¶ 73, 76.)

The Amended Complaint asserts three claims against Defendants Rago and Jericho pursuant to 42 U.S.C. § 1983: withholding and suppressing exculpatory information/evidence in violation of the Fourteenth Amendment (Count I), deliberate fabrication in violation of the Fourteenth Amendment (Count II), and civil rights conspiracy to violate the Fourteenth Amendment (Count III).  It also asserts a § 1983 municipal liability, or Monell, claim against the City (Count IV).  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In the instant Motion, Defendants seek dismissal of the Amended Complaint in its entirety, arguing that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes the Motion.

II.     **LEGAL STANDARD**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  We "accept[] all well-pleaded allegations in the complaint as true and

3

view[] them in the light most favorable to the plaintiff." Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, "we need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

Plaintiff brings claims pursuant to 42 U.S.C. § 1983.  Section 1983 "provides remedies for deprivations of rights established in the Constitution or federal laws." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  To state a § 1983 claim upon which relief can be granted, a plaintiff must allege that "the defendant, acting under color of state law, deprived him or her of a

4

right secured by the Constitution or the laws of the United States." Id. (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

    A.    <u>Witness Immunity</u>

Defendants first argue that Counts I-III, the claims against the individual Defendants, must be dismissed because they arise solely from Defendants' trial testimony and are therefore subject to witness immunity. "It is well-settled that police officers are entitled to absolute immunity from suit under § 1983 for giving perjured testimony." Gomez v. Upper Darby Twp., Civ. A. No. 13-1899, 2014 WL 1426386, at *4 (E.D. Pa. Apr. 11, 2014) (citing Rehberg v. Paulk, 566 U.S. 356(2012); Briscoe v. LaHue, 460 U.S. 325, 343 (1983)); see also Rehberg, 566 U.S. at 367 ("[A] trial witness has absolute immunity with respect to *any* [§ 1983] claim based on the witness' testimony. . . . Neither is there any reason to distinguish law enforcement witnesses from lay witnesses."). Witness immunity shields testimony and related preparatory discussions, but does not extend to pretrial misconduct such as fabricating evidence, even if that evidence is ultimately introduced at trial through perjured testimony. Rehberg, 566 U.S. at 369-70 & n.1 (quotations and citations omitted); see also Mervilus v. Union Cnty., 73 F.4th 185, 192, 194-95 (3d Cir. 2023) (permitting plaintiff to proceed on a fabrication of evidence claim against detective who allegedly performed unreliable polygraph examination and also testified falsely about it at trial). If a plaintiff "can make out the elements of his § 1983 claim without resorting to . . . the allegedly false testimony," such that "the claim exists independently of the [] testimony," witness immunity will not apply. Gainey v. City of Phila., 704 F. Supp. 3d 589, 601 (E.D. Pa. 2023) (second alteration in original) (quotation omitted); see also Armstrong v. Ashley, 60 F.4th 262, 275 (5th Cir. 2023) ("[P]re-trial evidence of fabrication independent from preparing and delivering testimony is not

5

immunized by later testimony."); Lisker v. City of Los Angeles, 780 F.3d 1237, 1242 (9th Cir. 2015) (distinguishing between testifying falsely, which triggers witness immunity, and "non-testimonial" acts such as interfering with evidence or witnesses, which do not (citations omitted)). Thus, to determine whether witness immunity bars Plaintiff's claims, we must examine whether the alleged basis for each claim goes beyond Defendants' trial testimony.

          1.   Withholding and Suppressing Exculpatory Information/Evidence (Count I)

In Count I, Plaintiff contends that Defendants Rago and Jericho violated his Fourteenth Amendment rights by withholding and suppressing exculpatory evidence. The Amended Complaint alleges that Defendants "intentionally excluded" impeachment evidence "from their trial testimony." (Am. Compl. ¶ 22.) It further alleges that Defendant Rago "withheld the existence of an alternate suspect," and specifically, that he "failed at any time during his testimony to make [Plaintiff] or anyone aware of the sole eyewitness' identification of a new suspect." (Id. ¶¶ 30, 86.) It does not allege that Defendants kept evidence from the prosecutor or otherwise suppressed it in any way prior to trial. We therefore conclude that this claim is solely "based on [Defendants'] testimony," and that witness immunity applies. Rehberg, 566 U.S. at 367.

Plaintiff argues in his Response that "if" the prosecutor suppressed exculpatory evidence and Defendant Rago remained silent, Rago could be liable. (Pl. Resp. at 5.) He also speculates that Defendant Jericho "likely" suppressed documentary evidence contradicting the misrepresentations in his testimony about the timing of the Rollins stop. (Id.) However, the Amended Complaint does not contain any such allegations, or any facts from which we could reasonably infer them. Accordingly, the Motion to Dismiss is granted with respect to Count I.

2. <u>Deliberate Fabrication of Evidence (Count II)</u>

Count II asserts that Defendants Rago and Jericho fabricated evidence in violation of Plaintiff's Fourteenth Amendment rights. The allegations with respect to Plaintiff's fabrication claim are that: (1) Defendant Rago testified falsely about the scope and thoroughness of the police investigation, specifically with respect to Plaintiff's and Rollin's alibis; (2) Defendant Rago testified falsely that DNA evidence could not be obtained from shell casings; and (3) Defendant Jericho testified falsely about the timing of his pre-arrest stop of Rollins to discredit Rollins's alibi. (Am. Compl. ¶¶ 91-93; <u>see also</u> <u>id.</u> ¶¶ 25, 28-29, 33, 35-36.) As these allegations illustrate, this claim also arises exclusively out of Defendants' testimony and is therefore barred by witness immunity.[1] <u>Cf.</u> <u>Briscoe</u>, 460 U.S. at 327, 345-46 (extending witness immunity to officers who allegedly testified falsely about fingerprint evidence and the credibility of codefendant statements).

In his Response, Plaintiff argues that fabricated evidence does not transform into immunized testimony simply because it is presented through testimony at trial. Nonetheless, where the alleged fabrication does not go beyond the Defendant's own false testimony, witness immunity still applies. <u>See</u> <u>Gainey</u>, 704 F. Supp. 3d at 600-01. The Third Circuit decision Plaintiff relies on, <u>Mervilus</u>, is consistent with this rule. There, the court concluded that a fabrication of evidence claim was viable because the defendant detective produced biased, unreliable polygraph evidence during the underlying investigation *and* testified falsely about it at trial. <u>See</u> <u>Mervilus</u>, 73 F.4th at 192, 195. Here, in contrast, Plaintiff's fabrication claim does not exist independent of

---

[1] The Amended Complaint contains a single, vague allegation, addressed by neither party, that "Defendant Rago knowingly influenced the Commonwealth's only inculpatory witness to continue to falsely implicate [Plaintiff] and Rollins despite overwhelming evidence demonstrating their innocence." (Am. Compl. ¶ 94.) It does not allege any facts about what this influence entailed, when it occurred, or any involvement Defendant Jericho might have had. We cannot conclude that this bare-bones allegation alone supports a reasonable inference that Defendant Rago (let alone Defendant Jericho) engaged in fabrication.

Defendants' testimony, and witness immunity therefore applies. See Gainey, 704 F. Supp. 3d at 601 (quotation omitted); Armstrong, 60 F.4th at 275; Lisker, 780 F.3d at 1242. The Motion to Dismiss is therefore granted with respect to Count II.

### 3. Civil Rights Conspiracy (Count III)

In Count III, Plaintiff asserts that the individual Defendants and other City employees conspired amongst themselves to deprive him of his Fourteenth Amendment rights. The Supreme Court has made clear that witness immunity "may not be circumvented by claiming that a . . . witness conspired to present false testimony." Rehberg, 566 U.S. at 369; see also Gainey, 704 F. Supp. 3d at 603 (noting that "the Supreme Court has squarely rejected" claims of conspiracy to testify falsely "on absolute immunity grounds" (citing Rehberg, 566 U.S. at 369)). The Amended Complaint alleges that Defendants conspired to fabricate evidence "by intentionally testifying to facts they knew to be false." (Am. Compl. ¶ 98.) It also alleges that Defendants agreed to withhold and suppress the eyewitness's identification of an alternative suspect, which, as discussed above, is only alleged to have occurred through omission from their trial testimony. (See id. ¶¶ 22, 30, 99, 101.) These allegations place this claim firmly within the bounds of witness immunity. See Rehberg, 566 U.S. at 369. While Plaintiff again speculates in his Response that the conspiracy to testify falsely could have been accompanied by other violations such as the suppression of contradictory documentary evidence, the Amended Complaint does not allege any such conduct. The Motion to Dismiss is therefore granted with respect to Count III.

### B. Municipal Liability (Count IV)

In Count IV, Plaintiff asserts a Monell claim against the City, arguing that municipal practices and customs, as well as the City's failure to adequately train, supervise, or discipline police officers, caused Plaintiff's injuries. Under § 1983, a municipality is not vicariously liable

for the constitutional violations of its employees simply by virtue of employing them. Monell, 436 U.S. at 691. Rather, municipal liability requires a plaintiff to demonstrate the municipality's culpability by showing: (1) "that an unconstitutional policy or custom of the municipality led to his or her injuries"; or (2) "that [the injuries] were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (citing and quoting Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)). Here, Plaintiff pursues both custom and failure-or-inadequacy theories of municipal liability, and Defendants contend that neither are adequately pled.[2]

1. Predicate Constitutional Violation

At the threshold, Defendants argue that Plaintiff's Monell claim fails under any theory because the Amended Complaint does not plausibly allege that Plaintiff's constitutional rights were violated in the first place, let alone that the City is responsible.

A municipality may be liable for the constitutional violations of its employees even if the employees themselves are immune. See Aitchison v. Raffiani, 708 F.2d 96, 100 (3d Cir. 1983) (explaining that "liability against the municipality is not precluded simply because the defendants were found immune in their individual capacities" (citation omitted)); Webb v. City of Maplewood, 889 F.3d 483, 487 (8th Cir. 2018) ("[A]lthough there must be an unconstitutional act by a municipal employee before a municipality can be held liable, there need not be a finding that a municipal employee is liable in his or her individual capacity." (quotations omitted)); Capra v.

---

[2] Although the Amended Complaint also references municipal policy, it does not identify any "official proclamation, policy, or edict" by a City policymaker, much less one directing police to testify falsely. Est. of Roman, 914 F.3d at 798 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). Moreover, Plaintiff makes no argument based on municipal policy in his Response. Accordingly, we conclude that Plaintiff is not pursuing a Monell claim based on policy, and that even if he were, such a claim would not be adequately pled.

Cook Cnty. Bd. of Rev., 733 F.3d 705, 711 (7th Cir. 2013) ("[M]unicipal entities are not entitled to absolute immunity even where the entity's officers are entitled to immunity."). Nonetheless, there must be some underlying constitutional violation for municipal liability to attach. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell, 436 U.S. at 694-95); Mosca v. Cole, 217 F. App'x 158, 165 (3d Cir. 2007). Here, the Amended Complaint contains two potential predicate violations: the Brady claim in Count I and the fabrication claim in Count II.[3]

                i.        Suppression of Exculpatory Evidence

Defendants argue that the Amended Complaint fails to allege an underlying constitutional violation based on the suppression of exculpatory evidence. Under Brady v. Maryland, 373 U.S. 83 (1963), prosecutors have a duty to disclose material, exculpatory evidence to defendants. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety, 411 F.3d 427, 442 (3d Cir. 2005), overruled on other grounds as recognized in Dique v. N.J. State Police, 603 F.3d 181, 183 (3d Cir. 2010); see also Giglio v. United States, 405 U.S. 150 (1972) (extending Brady's disclosure requirements to impeachment evidence favorable to the defense). While police have no similar obligation with respect to defendants, they "may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor." Gibson, 411 F.3d at 442-43.

As noted above, the Amended Complaint does not allege, and Plaintiff does not argue, that the Defendant officers suppressed exculpatory information from the prosecutor. Rather, the Amended Complaint alleges only that they excluded certain exculpatory information "from their trial testimony." (Am. Compl. ¶ 22; see also id. ¶ 30.) Plaintiff argues that Defendants could still

---

[3] The civil conspiracy claim in Count III does not suffice because its viability also depends on establishing a predicate constitutional violation that was the subject of the conspiracy in Count I or II. See Klein v. Madison, 374 F. Supp. 3d 389, 421 (E.D. Pa. 2019) (citing Glass v. City of Phila., 455 F. Supp. 2d 302, 359-60 (E.D. Pa. 2006); Rink v. Ne. Educ. Intermediate Unit 19, 717 F. App'x 126, 141 (3d Cir. 2017)).

have violated his rights under Brady if they ignored suppression by the prosecutor or suppressed documents contradicting their testimony, but no such facts are alleged in the Amended Complaint. We therefore conclude that the Amended Complaint does not plausibly allege a constitutional violation based on suppression of exculpatory evidence that could underpin Plaintiff's Monell claim against the City.

    ii.  Fabrication of Evidence

Defendants also argue that the Amended Complaint fails to allege an underlying constitutional violation based on fabrication of evidence. A plaintiff has a § 1983 claim for fabrication of evidence where he "has been convicted at a trial at which the prosecution has used fabricated evidence . . . if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." Halsey v. Pfeiffer, 750 F.3d 273, 294 (3d Cir. 2014). With respect to this claim, the Amended Complaint alleges that Defendants lied on the stand about the thoroughness of their investigation, the availability of DNA evidence, and the timing of Jericho's stop of Rollins. (Am. Compl. ¶¶ 25, 28-29, 33, 35-36, 91-93.) It alleges that these lies undermined Plaintiff's and Rollins's interconnected alibis, making Plaintiff appear dishonest and seemingly negating crucial and credible evidence of his innocence. (Id. ¶¶ 26, 34, 36.) Moreover, it alleges that the alibis would have contradicted the only evidence against Plaintiff, the already shaky testimony of the sole eyewitness. (Id. ¶¶ 4, 6, 23-24, 27, 37.)

Defendants contend that these allegations do not demonstrate that Defendants Rago and Jericho were knowingly untruthful, rather than simply mistaken in their testimony. However, the alleged falsehoods all involved facts within Defendants' personal knowledge or law enforcement expertise, supporting a reasonable inference that they were intentional. We conclude that, based on these allegations, the Amended Complaint plausibly alleges that the Defendant officers violated

11

Plaintiff's constitutional rights by fabricating evidence in the form of perjured testimony that was critical to Plaintiff's conviction.  While the officers themselves are shielded by witness immunity, the alleged violation is sufficient to support Plaintiff's Monell claim against the City.

### 2. Municipal Liability Based on Custom

Defendants next argue that, even if the Amended Complaint alleges a constitutional violation, it does not plausibly allege that the violation was caused by a City or PPD custom.  In the context of a Monell claim, a custom is "a given course of conduct" that is "not specifically endorsed or authorized by law, [but] is so well-settled and permanent as virtually to constitute law." Est. of Roman, 914 F.3d at 798 (quoting Bielevicz, 915 F.2d at 850) (citation omitted).  To state a Monell claim based on custom, a plaintiff must plausibly allege an "'affirmative link'" between a municipal custom and his injury by alleging that the municipality "had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" Id. (alterations in original) (quoting Bielevicz, 915 F.2d at 850-51).[4]

The Amended Complaint alleges that in the decades leading up Plaintiff's 2006 investigation and trial, the City permitted a culture of widespread misconduct to take root in its police department, which included officers "testifying in deceitful, intentionally incomplete, or intentionally ambiguous fashion so as to mislead a court and jury into falsely convicting innocent individuals." (Am. Compl. ¶ 44; see also id. ¶¶ 41-43, 45, 47.)  It alleges a sweeping history of

---

[4] Defendants also argue that Plaintiff is required to identify a specific City decisionmaker responsible for the purportedly unconstitutional custom.  However, the Third Circuit has made clear that where a plaintiff plausibly alleges the existence of a municipal custom, he need not separately "identify a responsible decisionmaker in his pleadings" because "[p]ractices so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers." Est. of Roman, 914 F.3d at 798 (citation omitted); Bielevicz, 915 F.2d at 850 (alteration in original) (quotation omitted).

publicized PPD malfeasance including: media coverage of police beating suspects to obtain confessions between 1974 and 1978 (id. ¶¶ 52-57); the 1980's "Sex for Lies" scandal in which police obtained false inculpatory statements by facilitating sexual liaisons for jailhouse informants (id. ¶¶ 58-68); and consent decrees or injunctions from the 1980's and 2011 meant to curtail unlawful and discriminatory stops, arrests, and searches. (Id. ¶¶ 73-74, 76, 77.) It further alleges numerous wrongful convictions and arrests in cases between 1984 and 2001 that led to exonerations, though it alleges no details about the misconduct those cases involved. (Id. ¶¶ 70-72.) There are several specific allegations with respect to perjury: that police testified falsely to shore up coerced confessions in the 1970's; that the City was aware as of 1990 that Detective Lawrence Gerrard had lied under oath about the events of the "Sex for Lies" scandal; and that there were similar claims of police perjury in other cases from the same timeframe as Plaintiff's. (Id. ¶¶ 52, 66, 69.)

Defendant argues that this prior misconduct is too dissimilar, both temporally and substantively, from that alleged in Plaintiff's case. This argument goes to both aspects of Plaintiff's custom-based claim — whether the alleged misconduct was sufficiently "well-settled and permanent" to constitute a custom, and whether the City "had knowledge of similar unlawful conduct in the past" and caused Plaintiff's injuries by failing to take appropriate precautions. Est. of Roman, 914 F.3d at 798 (quotations and citation omitted). We agree that much of the history alleged occurred decades before Plaintiff's case and involved a wide range of disparate misconduct. The list of wrongful convictions, which could provide a through-line from the 1980's to the 2000's, is minimally probative because there are no allegations as to what misconduct those cases involved. Nonetheless, as noted, the Amended Complaint does allege similar claims of police perjury in other cases around the same time as Plaintiff's, as well as police lying to cover

13

up misconduct and ensure wrongful convictions in decades prior. Moreover, while some of the alleged wrongdoing may be too dissimilar to suffice on its own, it nonetheless supports a reasonable inference of extensive misconduct within PPD at the time of Plaintiff's investigation, lending plausibility to Plaintiff's more pertinent allegations. Viewing these allegations in the light most favorable to Plaintiff, we conclude that the Amended Complaint plausibly alleges that the fabrication of evidence through police perjury rose to the level of a well-settled custom within PPD, and that the City caused Plaintiff's injury by knowingly acquiescing in that custom. Accordingly, the Motion to Dismiss is denied with respect to Plaintiff's Monell claim insofar as it is based on custom.

### 3. Municipal Liability Based on Failure or Inadequacy

Defendants also argue that the Amended Complaint fails to state a claim for municipal liability based on failure or inadequacy. With respect to this theory of liability, the Amended Complaint alleges that the City failed to train, supervise, and discipline its officers for rampant and varied misconduct, including perjury. (Am. Compl. ¶¶ 46-47.) It alleges that low-level officers were never trained on their constitutional obligations and that they maintained this ignorance when they assumed leadership roles within the police department. (Id. ¶¶ 47, 54.) It further alleges that supervisors at all levels tolerated and even encouraged serious and chronic misconduct by their subordinates. (Id. ¶¶ 55, 71.) Finally, it alleges that PPD routinely ignored credible evidence and complaints of officer misconduct, and that when it did investigate, its disciplinary system was woefully ineffective, biased, and poorly staffed. (Id. ¶¶ 51, 55, 68, 79.)

A failure to train, discipline, or supervise will only lead to municipal liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." Est. of Roman, 914 F.3d at 798 (quoting City of Canton, 489 U.S. at 388); see also

Forrest, 930 F.3d at 105 (citation omitted) (explaining that a municipality may be liable for failures related to supervision and discipline of police officers as well as those related to training). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" Est. of Roman, 914 F.3d at 798 (alterations in original) (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011)).

Here, the City knows its police will confront situations where they are required to testify under oath. See Est. of Roman, 914 F.3d at 798 (quotation omitted). Moreover, there is no dispute that testifying falsely under those circumstances is the kind of "wrong choice" that "will frequently cause deprivation of constitutional rights." Id. (quotation omitted). With respect to the remaining element, we conclude that Plaintiff's allegations of prior misconduct suffice at this stage to demonstrate "a history of employees mishandling" such situations. Id. (quotation omitted). As discussed in the context of Plaintiff's custom-based claim, the allegations of police perjury in other cases from the same time period as Plaintiff's, with similar misconduct from the 70's and 80's allegedly coming to light in the 90's and other misconduct rife throughout, viewed in the light most favorable to Plaintiff, support a reasonable inference that the City was on notice of the potential for constitutional violations and was therefore deliberately indifferent for failing to act. This is especially true at this early stage, before Plaintiff has had the benefit of any discovery. See Crosland v. City of Phila., 676 F. Supp. 3d 364, 380 (E.D. Pa. 2023) ("Municipal liability under § 1983 'is generally not amenable to resolution at the pleading stage, as it requires a plaintiff to plead facts outside his or her personal knowledge.'" (quoting 3909 Realty LLC v. City of Phila., Civ. A.

No. 21-30, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021))). We therefore deny the Motion to Dismiss with respect to Plaintiff's Monell claim based on failure or inadequacy.

IV.   **CONCLUSION**

For the forgoing reasons, the Motion to Dismiss is granted with respect to Counts I-III. The Motion is denied with respect to Count IV, Plaintiff's Monell claim, which will proceed on both custom and failure-or-inadequacy theories. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.